FILED
2026 Oct-21 PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ASHLEY ILENE, GALLIENNE NABILA, JANET GUZMAN, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE,<br><br>Plaintiffs,<br><br>- against -<br><br>CRU BIRMINGHAM, LLC d/b/a CRU LOUNGE BIRMINGHAM,<br><br>And,<br><br>CRU FRANCHISING INTERNATIONAL, LLC,<br><br>Defendants. | Case No.: |

Plaintiffs ASHLEY ILENE, GALLIENNE NABILA, JANET GUZMAN, STEPHANIE RAO and YODIT YEMANE a/k/a JODIE JOE, (collectively, "Plaintiffs"), file this Complaint against CRU BIRMINGHAM, LLC, d/b/a CRU LOUNGE BIRMINGHAM ("CRU") and CRU FRANCHISING INTERNATIONAL, LLC ("Franchisor") (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants; misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their lounge bar, CRU LOUNGE BIRMINGHAM located at 2300 1st Ave N, Birmingham, Alabama 35203 (hereinafter referred to as the "Lounge Bar" or "Cru Birmingham").

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of the Alabama Right of Publicity Act - Ala. Code §§ 6-5-770 through 6-5-774; d) Common Law Right of Publicity; e) Alabama Deceptive Trade Practices Act (ADTPA) Ala. Code § 8-19-1 et seq.; f) Defamation; g) Negligence and Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant CRU BIRMINGHAM, LLC, is a limited liability company formed under the laws of the state of Alabama, with its principal place of business located at 2300 1st Ave N, Birmingham, Alabama, 35203. Upon information and belief, CRU BIRMINGHAM, LLC operates CRU LOUNGE BIRMINGHAM, which is located at 2300 1st Ave N, Birmingham, Alabama 35203.

8. According to publicly available records, Defendant CRU FRANCHISING INTERNATIONAL, LLC, is a limited liability company formed

under the laws of the state of Delaware, with its principal place of business located at 691 John Wesley Dobbs Ave NE, Suite V-144, Atlanta, Georgia, 30312.

9. Venue is proper in the United States District Court for the Northern District of Alabama under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

10. This Court has personal jurisdiction over Defendant CRU FRANCHISING INTERNATIONAL, LLC ("Franchisor") because Franchisor purposefully directed its conduct at the State of Alabama and this District. Franchisor licensed the CRU trademarks and brand system to a Birmingham, Alabama licensee; created, approved, and distributed brand-level advertising creative for use at Alabama location; and derived revenue from the Birmingham location. Plaintiffs' claims arise directly out of and relate to those Alabama-directed contacts.

11. A significant portion of the alleged causes of action arose and accrued in Birmingham, Alabama and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominantly located in Birmingham, Alabama.

## PARTIES

***Plaintiffs***

12. Plaintiff ASHLEY ILENE ("ILENE") is a well-known professional model, and a resident of Burlington County, New Jersey.

13. Plaintiff GALLIENNE NABILA ("NABILA") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model, and a resident of Los Angeles County, California.

15. Plaintiff STEPHANIE RAO ("RAO") is a well-known professional model, and a resident of Los Angeles County, California.

16. Plaintiff YODIT YEMANE a/k/a JODIE JOE ("YEMANE") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

17. Defendant, CRU BIRMINGHAM, LLC d/b/a CRU LOUNGE BIRMINGHAM, is a limited liability company formed under the laws of the state of Alabama and registered to conduct business in Alabama. During times relevant to this action, CRU BIRMINGHAM, LLC operated CRU LOUNGE BIRMINGHAM.

18. Service of process may be perfected upon Defendant CRU BIRMINGHAM, LLC d/b/a CRU LOUNGE BIRMINGHAM by serving the registered agent for service of process, Torica U Cornelius, who can be located at 2300 1st Avenue N, Birmingham, AL 35203.

19. Defendant, CRU FRANCHISING INTERNATIONAL, LLC ("Franchisor"), is a limited liability company formed under the laws of the state of Delaware and registered to conduct business in Delaware.

20. Service of process may be perfected upon Defendant CRU FRANCHISING INTERNATIONAL, LLC by serving the registered agent for service of process, C T Corporation System, who can be located at 289 S Culver St, Lawrenceville, GA 30046.

## FACTUAL ALLEGATIONS

21. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

22. Plaintiffs' careers in the modeling industry place a high degree of value on their goodwill and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily

selective concerning the companies, and brands, for which they model.

23. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

24. In the case of each Plaintiff, this apparent claim was false.

25. Moreover, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization.

26. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images has caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

27. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

28. ILENE is a model, content creator, influencer and clothing designer based in New Jersey. As a clothing designer, Ilene has created her own brand and website, Gal Vault (galvault.com). Ilene's start in modeling began when her social media posts caught the attention of Pretty Little Thing, which quickly led to collaborations with Fashion Nova, Shein and Matte Collection, and a career that has taken her around the world. Her current social media following is 115,000 on TikTok and 322,000 on Instagram. Ilene is also an advocate of regular exercise and self-care.[1]

29. That we know of, ILENE is depicted in the photo in Exhibit "A" to

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

promote Cru Birmingham on its Instagram page. This Image was intentionally altered to make it appear that ILENE was either an employee working at Cru Birmingham, that she endorsed Cru Birmingham, or that she was otherwise associated or affiliated with Cru Birmingham.

30. ILENE has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31. NABILA is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

32. That we know of, NABILA is depicted in the photos in Exhibit "B" to promote Cru Birmingham on its Instagram page. These Images were intentionally altered to make it appear that NABILA was either an employee working at Cru Birmingham, that she endorsed Cru Birmingham, or that she was otherwise associated or affiliated with Cru Birmingham.

33. NABILA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle

photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

35. That we know of, GUZMAN is depicted in the photos in Exhibit "C" to promote Cru Birmingham on its Instagram page. These Images were intentionally altered to make it appear that GUZMAN was either an employee working at Cru Birmingham, that she endorsed Cru Birmingham, or that she was otherwise associated or affiliated with Cru Birmingham.

36. GUZMAN has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. RAO who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

38. That we know of, RAO is depicted in the photo in Exhibit "D" to promote Cru Birmingham on its Instagram page. This Image was intentionally

altered to make it appear that RAO was either an employee working at Cru Birmingham, that she endorsed Cru Birmingham, or that she was otherwise associated or affiliated with Cru Birmingham.

39. RAO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40. YEMANE is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

41. That we know of, YEMANE is depicted in the photos in Exhibit "E" to promote Cru Birmingham on its Instagram page. These Images were intentionally altered to make it appear that YEMANE was either an employee working at Cru Birmingham, that she endorsed Cru Birmingham, or that she was otherwise associated or affiliated with Cru Birmingham.

42. YEMANE has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

43. CRU operates (or operated, during the relevant time period) a Lounge

Bar, where they are (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

44. CRU owns, operates, and controls Cru Birmingham's social media accounts, including its Facebook, Twitter, and Instagram accounts.

45. CRU used Cru Birmingham's Facebook, Twitter, and Instagram accounts to promote Cru Birmingham and to attract patrons.

46. CRU did this for its own commercial and financial benefit.

47. CRU has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Cru Birmingham, endorsed Cru Birmingham, or was otherwise associated or affiliated with Cru Birmingham.

48. CRU used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Cru Birmingham to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

49. CRU was well aware that none of the Plaintiffs have ever been affiliated with or employed by Cru Birmingham, and at no point have any of the Plaintiffs ever endorsed Cru Birmingham or otherwise been affiliated or associated with Cru Birmingham.

50. All of CRU's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

51. CRU has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

52. Plaintiffs have never received any benefit from CRU's unauthorized use of their Images.

***Franchisor's Role in the Misappropriation***

53. Franchisor owns and licenses the CRU and CRU "Catch a Vibe" trademarks and trade dress, which appear on the advertisement identified in Exhibits A through E.

54. Franchisor publicly markets its franchise program at https://www.crulounge.com/franchise. A true and correct copy of that page, captured on September 7, 2026, is attached as Exhibit F. On that page, Franchisor represents that it has "expanded nationally" since it began "franchising in 2020," that it offers "PRO MARKETING SUPPORT" as one of three principal categories of franchisee support, that its system includes "Local Launch Plans" and "A Centralized Management Portal," and that it collects a Royalty Fee of 7% and a Marketing Fee of 2%.

55. Under the heading "WHAT'S INCLUDED IN CRU LOUNGE," Franchisor displays, as an illustration of what franchisees receive, a promotional event advertisement for a CRU-branded location at 2714 Guadalupe Street, Austin, Texas, bearing the CRU "Catch a Vibe" mark. Franchisor thereby represents to prospective and existing franchisees that promotional advertising creative of the type identified in Exhibits A through E is furnished as part of the CRU franchise system.

56. Upon information and belief, Franchisor created, approved, or supplied brand-level advertising creative, including promotional event advertising, for use across its licensed locations, including the Birmingham location.

57. Upon information and belief, under the franchise or license agreement governing the Birmingham location, Franchisor retained the right to review, approve, and require or prohibit local advertising, and retained the right to control the use of its marks in advertising, including the advertisement identified in Exhibits

A through E.

58. Franchisor received a direct financial benefit from the advertising published at the Birmingham location, including through the 7% Royalty Fee and 2% Marketing Fee it discloses at Exhibit F.

59. Upon information and belief, Franchisor had actual or constructive knowledge that advertisements bearing its marks depicted individuals who had not consented to and were not compensated for the commercial use of their Images.

***Standard Business Practices in the Modeling Industry***

60. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

61. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

62. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***CRU's Misappropriation of Plaintiffs' Images***

63. CRU was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Cru Birmingham.

64. Unauthorized use of Plaintiffs' Images deprives them of income they

are owed relating to the commercialization of their Images.

65. In addition, Plaintiffs allege that any improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of a false impression of association with Cru Birmingham.

66. At no point was any Plaintiff ever contacted by any CRU, or any representative of any CRU, to request the use of any of Plaintiffs' Images.

67. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

68. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Cru Birmingham's website, Twitter, Facebook, or Instagram accounts.

69. CRU used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

70. Further, Plaintiffs are informed and believe, and thereon allege, that the unauthorized use, display, publication, and commercial exploitation of Plaintiffs' images by CRU was not openly disclosed to Plaintiff and were not reasonably discoverable through ordinary diligence at the time the subject images were initially posted or published.

71. Plaintiffs did not have actual knowledge of CRU's unauthorized use of their likenesses until on or about August 2026, when the infringements were first discovered through investigation and review of CRU's promotional materials. Prior to that date, Plaintiffs neither knew nor reasonably should have known of the existence, nature, or extent of CRU's wrongful conduct.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

72. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

73. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to CRU and protects Plaintiffs from the conduct described herein.

74. CRU used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at CRU's establishment or endorsed CRU's businesses. This was done to promote and attract clientele to CRU's establishment and thereby generate revenue for CRU.

75. Thus, this was done in furtherance of CRU's commercial benefit.

76. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. CRU's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identity to build their brand, they have acquired distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggests the characteristics of their product or service that require an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

77. Both Plaintiffs and CRU compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

78. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in CRU consumers' minds, which led to competitive injury to Plaintiffs. There is no doubt that CRU used Plaintiffs'

image for advertising purposes, that is to promote their business enterprises; as such, CRU's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

79. CRU's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Plaintiffs' fans and present and prospective clients into believing that CRU's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

80. Despite the fact that CRU was at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with CRU's establishment.

81. CRU knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at CRU's establishment.

82. Upon information and belief, CRU's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of CRU's businesses, and the goods and services provided by CRU.

83. Franchisor is directly liable under 15 U.S.C. § 1125(a)(1)(A) because Franchisor itself used Plaintiffs' Images in commerce. Franchisor created, approved, or supplied the advertising creative bearing Plaintiffs' Images for publication at CRU-branded locations, and published or republished advertisements bearing Plaintiffs' Images on brand-controlled social media accounts. Each such act constitutes a use in commerce of a false designation of origin, sponsorship, approval, or association within the meaning of § 1125(a)(1)(A). In the alternative, Franchisor is contributorily liable because it had actual or constructive knowledge that advertisements bearing its licensed marks depicted individuals who had not consented to or been compensated for the commercial use of their Images, and

materially contributed to that use by supplying the creative, licensing the marks under which it was published, exercising approval authority over local advertising, and continuing to authorize the use of its marks in those advertisements.

84. As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

85. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

86. Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

87. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

88. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

89. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to CRU

and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

90. CRU used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's businesses and activities, and/or consented to or authorized CRU to use their image in order to advertise, promote, and market CRU's businesses, CRU's establishment, and/or CRU's establishment events and activities.

91. CRU's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market CRU's businesses, CRU's establishment, and/or CRU's events and activities as described in this Complaint was false and misleading.

92. CRU's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's businesses, CRU's establishment or CRU events or activities, or consented to or authorized CRU's usage of her image in order to advertise, promote, and market CRU's businesses or CRU events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

93. CRU's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of CRU's establishment, as to the general quality of attendees and participants of CRU's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's

businesses, CRU's establishment or CRU establishment events or activities, or consented to or authorized CRU's usage of their image in order to advertise, promote, and market CRU's businesses or CRU establishment events and activities.

94. Upon information and belief, CRU's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or were otherwise affiliated with CRU's establishment, endorsed CRU's businesses, or CRU establishment events and activities, or consented to or authorized CRU's usage of her image in order to advertise, promote, and market CRU's businesses or CRU establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join CRU's establishment, visit CRU's establishment, and participate in events at CRU's establishment and had a material effect and impact on the decision of members and prospective members and participants to join CRU's establishment, visit CRU's establishment and take part in the events at CRU's establishment.

95. CRU's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit CRU's business interests by, among other things, promoting CRU's establishment and its activities and attracting clientele to CRU's establishment.

96. CRU knew or should have known that its unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

97. Franchisor made or caused to be made the false and misleading representations described in this Count. Franchisor authored, approved, or furnished the advertising creative depicting Plaintiffs' Images. Franchisor's conduct was undertaken for its own commercial benefit, in that Franchisor derived royalties, license or franchise fees, advertising fund contributions, or a share of revenue

generated by the advertising described herein. In the alternative, Franchisor knowingly and materially contributed to the false advertising described in this Count by supplying the creative, licensing the marks under which it was published, and retaining and exercising the right to approve, require, or prohibit the local advertising in which Plaintiffs' Images appeared.

98. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

99. Defendants' wrongful conduct as described herein was willful.

100. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

101. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

102. The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

103. Defendants had caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

104. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continues to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**(Violation of the Alabama Right of Publicity Act - Ala. Code §§ 6-5-770 through 6-5-774)**

105. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

106. Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her image is readily identifiable in each photograph.

107. Plaintiffs' Images have not been copyrighted under federal law.

108. Each Plaintiff is a person within the meaning of the Alabama Right of Publicity Act and possesses enforceable rights in her name, image, likeness, and other indicia of identity.

109. CRU used Plaintiffs' photographs, images, likenesses, and personas—each constituting "indicia of identity" under Ala. Code § 6-5-771—without consent and for purposes of advertising, promoting, and marketing CRU's commercial establishment.

110. CRU's use of Plaintiffs' indicia of identity was for commercial purposes within the meaning of Ala. Code § 6-5-772 and was not incidental, newsworthy, expressive, or otherwise exempt under the Act.

111. CRU knew or should have known that Plaintiffs had not consented to the use of their indicia of identity and nevertheless willfully and intentionally exploited Plaintiffs' identities for CRU's own commercial gain.

112. As a direct and proximate result of CRU's unlawful conduct, Plaintiffs have suffered actual damages, including loss of licensing fees, loss of control over their identities, reputational harm, and emotional distress, and CRU had been unjustly enriched.

113. CRU misappropriated Plaintiffs' likenesses by publishing their image and likeness on CRU's website or related social media accounts as part of CRU's

advertising campaign.

114. CRU's use and publication of Plaintiffs' Images as set forth in the exhibits attached to this complaint was to advertise their establishment and was for the purpose of advertising goods or services.

115. Plaintiffs are further informed and believe and hereon allege that discovery will prove that CRU's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

116. Plaintiffs are further informed and believe and hereby allege that CRU's republication of Plaintiffs' image and likeness was altered to reach a new audience and/or promote a different product.

117. CRU published, performed, distributed, transmitted or otherwise made available to the public each Plaintiff's image and likeness with knowledge that the use was unauthorized.

118. CRU knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

119. CRU's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

120. CRU never obtained Plaintiffs' consent for the use of their images and likenesses.

121. CRU's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

122. Franchisor used Plaintiffs' indicia of identity for commercial purposes within the meaning of Ala. Code §§ 6-5-771 and 6-5-772, without consent. Franchisor created, approved, or supplied the advertising creative in which Plaintiffs' indicia of identity appeared for publication at

CRU-branded locations, including the Birmingham location, and published or authorized the publication of that creative on brand-controlled accounts.

123. Franchisor's use was for its own commercial benefit, in that Franchisor derived royalties, license or franchise fees, marketing fund contributions, and a share of revenue generated at the Birmingham location, including through the 7% Royalty Fee and 2% Marketing Fee it discloses at Exhibit F.

124. Franchisor knew or reasonably should have known that Plaintiffs had not consented to the use of their indicia of identity, and Franchisor's use was willful.

125. Separately, and upon information and belief, Franchisor retained the right to control the specific conduct at issue, in that under the franchise or license agreement governing the Birmingham location Franchisor retained the right to review, approve, require, and prohibit local advertising and to control the manner in which its marks were used in advertising.

126. As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

127. As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

128. Pursuant to Ala. Code §§ 6-5-774 and 6-5-775, Plaintiffs seek injunctive relief, actual damages, disgorgement of Defendants' profits, punitive damages, attorneys' fees, costs, and destruction of all materials created or used in violation of the Act.

## FOURTH CAUSE OF ACTION
## (Common Law Right of Publicity)

129. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

130. CRU has appropriated each Plaintiff's likeness for CRU's commercial purposes without authority or consent from Plaintiffs.

131. CRU misappropriated Plaintiffs' likenesses by publishing their image and likeness on CRU's website or related social media accounts as part of CRU's advertising campaign.

132. CRU's website and social media accounts were designed to advertise and attract business to CRU and generate revenue for CRU.

133. Plaintiffs are informed and believe and hereon allege that the manner in which CRU posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that CRU published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

134. Plaintiffs are further informed and believe and hereon allege that discovery will prove that CRU republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

135. Plaintiffs are informed and believe and hereby allege that CRU's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

136. Upon information and belief, CRU's use of Plaintiffs' image and likeness did in fact attract clientele and generate business for CRU.

137. At no point did any CRU ever seek or receive permission or consent to use any Plaintiff's image and likeness for any purpose.

138. CRU was at all relevant times aware that it had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

139. At no point did CRU ever compensate Plaintiffs for its unauthorized

use of their image and likeness.

140. Franchisor directly participated in the misappropriation of Plaintiffs' likenesses by creating, approving, or supplying the advertising creative in which Plaintiffs' Images appeared, and by publishing or republishing that creative on brand-controlled accounts, and appropriated the commercial value of Plaintiffs' likenesses for its own benefit.

141. Separately, and upon information and belief, Franchisor retained the right to review, approve, require, and prohibit the local advertising at the Birmingham location in which Plaintiffs' Images appeared, and its retained right of control extended to the very conduct that caused Plaintiffs' injuries.

142. Plaintiffs have been damaged in amounts to be proved at trial.

## FIFTH CAUSE OF ACTION
**(Alabama Deceptive Trade Practices Act (ADTPA) Ala. Code § 8-19-1 et seq.)**

143. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

144. CRU operated its website and social media accounts in order to promote CRU's establishment, to attract clientele thereto, and to thereby generate revenue for CRU.

145. As such, CRU's operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Alabama.

146. CRU's publication and use of Plaintiffs' image and likeness was in a manner that made it appear that Plaintiffs gave consent for the use of their Images, and/or created the false impression that Plaintiffs were either working at CRU's establishment, endorsed the same, or were otherwise affiliated, associated, or connected with CRU.

147. As such, CRU's intent in publishing Plaintiffs' image and likeness was

to mislead the public as to Plaintiffs' employment at and/or affiliation with CRU.

148. CRU thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Alabama.

149. CRU's advertising practices offend the public policy of Alabama insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for CRU commercial benefit.

150. CRU's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with CRU.

151. CRU advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with CRU.

152. There are no benefits to CRU's advertising practices as set forth herein except a benefit to CRU's own commercial interests.

153. Franchisor engaged in unfair methods of competition and unfair or deceptive acts or practices in or affecting trade or commerce in the State of Alabama. Franchisor licensed its marks for use in Alabama, supplied or approved advertising creative published under those marks at the Birmingham location, and published or authorized the publication of the advertisements identified in Exhibits A through E depicting Plaintiffs' Images without authorization, thereby creating the false impression that Plaintiffs worked at, endorsed, or were affiliated with a CRU-branded location.

154. Franchisor's conduct occurred in the course of its regular business of licensing, marketing, and advertising CRU-branded locations, and proximately caused injury to Plaintiffs.

155. As a result of Defendants' unauthorized and misleading publication of Plaintiffs' image and likeness on their website and social media accounts, each of

the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

156. As a result of Defendants' unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

**SIXTH CAUSE OF ACTION**
**(Defamation)**

157. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

158. As detailed throughout this Complaint, CRU has published altered image and likeness of Plaintiffs in order to promote CRU to the general public and potential clientele.

159. CRU's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by CRU, that they endorsed CRU, or that they had some affiliation with CRU.

160. None of these representations were true.

161. In publishing Plaintiffs' Images, it was CRU's intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with CRU.

162. CRU was at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by CRU, had no affiliation with CRU, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

163. In the alternative, CRU published the image and likeness of Plaintiffs with actual malice because they knew – or reasonably should have known – that Plaintiffs were not employed by CRU, had no affiliation with CRU, had not

consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

164. Despite CRU's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

165. Franchisor published and republished the altered Images of Plaintiff described in this Count, or authorized and ratified their publication, on brand-controlled social media accounts and in advertising creative it created, approved, or supplied for use at CRU-branded locations. Franchisor knew or, in the exercise of reasonable care, should have known that the representations conveyed by those publications were false.

166. Defendants' publication of Plaintiffs' image and likeness constitutes defamation under Alabama law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendants' establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

167. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Alabama law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

168. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which the publication of the image and likeness supports.

169. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Alabama law because, insofar as said publication falsely portrays each of the Plaintiffs as Defendants' employee, it imputes unchastity to her.

170. Defendants' publication of Plaintiffs' image and likeness caused Plaintiff to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
## (Negligence and Respondeat Superior)

171. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

172. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

173. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

174. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

175. Similarly, Defendants further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not

deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendants.

176. Defendants breached their duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

177. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and Alabama law, were not violated. Defendants breached their duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

178. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

179. Franchisor owed Plaintiff an independent duty of reasonable care arising from its own retained control over the advertising published under its marks. Having reserved the right to create, review, approve, require, and prohibit advertising at CRU-branded locations, Franchisor was obligated to exercise that control with reasonable care so as not to appropriate the Images of persons with whom it had not contracted and whom it had not compensated.

180. Franchisor breached that duty by creating, approving, or supplying advertising creative depicting Plaintiffs' Images without their authorization; by failing to promulgate or enforce any policy or procedure governing the sourcing and clearance of images used in advertising published under its marks; and by failing to require the removal of the advertisements identified in Exhibit A after it knew or

should have known that Plaintiff had not consented to its use.

181. Franchisor's breach was a proximate cause of the harm Plaintiffs suffered

182. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**<u>EIGHTH CAUSE OF ACTION</u>**
**(Conversion)**

183. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

184. Each Plaintiff is, and at all relevant times was, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

185. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain.

186. As a result of Defendants' unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

187. Franchisor exercised unauthorized dominion and control over Plaintiffs' Images by supplying, approving, publishing, or republishing them in advertising creative for its own commercial benefit, in denial of and inconsistent with Plaintiffs' rights.

**<u>NINTH CAUSE OF ACTION</u>**
**(Unjust Enrichment)**

188. Plaintiffs re-allege each and every allegation set forth in the paragraphs above and incorporate the same by reference as though fully set forth herein.

189. As set forth in detail above, Defendants published Plaintiffs' Images in

order to promote the Defendants' establishment to the general public and potential clientele.

190. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendants.

191. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

192. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

193. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Images because said publication has assisted Defendants in attracting clientele to their establishment.

194. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

195. As such, Plaintiffs have been damaged in an amount to be determined at trial.

196. Franchisor was enriched by the unauthorized use of Plaintiffs' Images through royalties, license or franchise fees, advertising fund contributions, or a share of revenue generated at the Birmingham location, and through the promotional value the advertising conferred on the CRU brand it owns. Plaintiff has not been compensated, and Franchisor's retention of that benefit is unjust.

## **TENTH CAUSE OF ACTION**
**(Quantum Meruit)**

197. Plaintiffs re-allege each and every allegation set forth in the paragraphs

above and incorporate the same by reference as though fully set forth herein.

198. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

199. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

200. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their establishment, Defendants have not compensated Plaintiffs.

201. Plaintiff is therefore entitled to reasonable compensation for Defendants' unauthorized use of their image and likeness.

202. Franchisor accepted and availed itself of the benefit of Plaintiffs' Images under circumstances in which it knew or should have known that Plaintiff expected compensation for the commercial use of her likeness. Franchisor has not compensated Plaintiff, who is entitled to the reasonable value of that use.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Cru Birmingham's Lounge Bar;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and T.C.A 47-18-101, *et seq.*;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and T.C.A 47-18-101, *et seq*.;

(e) For all damages available to Plaintiffs under the Alabama Right of Publicity Act - Ala. Code §§ 6-5-770 through 6-5-774;

(f) For all damages available to Plaintiffs under the Alabama Deceptive Trade Practices Act (ADTPA) Ala. Code § 8-19-1 et seq;

(g) For such other and further relief as the Court may deem just and proper.

Dated: October 21, 2026.
New York, NY

***/s/ John V. Golaszewski***
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

***/s/ Adam V. Vickers***
Adam V. Vickers
Bar Number: 0680A62V
**INTELLECTUAL PROPERTY CONSULTING, LLC**
2007 3rd Ave. North
Birmingham, Alabama 35203
504-322-7166
vickers@iplawconsulting.com